IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:13-CV-92-FL

| | |
|---|---|
| RACHEL MARIE SIDDONS, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-24, DE-26] pursuant to Fed. R. Civ. P. 12(c). Claimant Rachel Marie Siddons ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be upheld.

### I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on July 29, 2010, alleging disability beginning November 7, 2009. (R. 11, 32, 160). The claim was denied initially (R. 32, 66-77) and upon reconsideration (R. 32, 92-115). A hearing before the Administrative Law Judge ("ALJ") was held on September 13, 2011, at which Claimant was represented by counsel, and

a vocational expert ("VE") appeared and testified. (R. 6-27). On November 17, 2011, the ALJ issued a decision denying Claimant's request for benefits. (R. 32-43). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 1-5), and submitted additional evidence as part of her request (R. 278-80). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on February 8, 2013. (R. 1-5, 278-80). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ

2

analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520, under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to give proper weight to the medical opinion of Claimant's treating physician, Karen Skarda, M.D.; (2) improper

3

assessment of Claimant's residual functional capacity ("RFC"); (3) posing a hypothetical that included Claimant could occasionally stoop and failing to include in the hypothetical that the side effects of Claimant's medications limit her ability to work; and (4) improper assessment of Claimant's credibility. Pl.'s Brief. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 3-12.

## IV. FACTUAL HISTORY

### A.    ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 34). Next, the ALJ determined Claimant had the following severe impairments: "diabetes mellitus with neuropathy; hypertension with left atrial enlargement; asthma; mood disorder; irritable bowel syndrome; diverticulitis; and kidney stones." *Id.* The ALJ also found Claimant had nonsevere impairments of "lumbar strain and psoriasis." *Id.* However, at step three, the ALJ concluded that Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 35-36). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitations in her activities of daily living and moderate limitations in her social functioning, concentration, persistence and pace with no episodes of decompensation. (R. 35-36).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[1] with the following limitations: avoidance of even moderate

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out

4

exposure to pulmonary irritants or work hazards; standing for only short periods and walking short distances (requires a cane for anything further); no climbing ladders, ropes, or scaffolds; occasional stooping; and frequent postural activities. (R. 36-41). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 40-41). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a cashier, housekeeper, deli clerk, or stocker. (R. 41). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 41-42).

### B.   Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 41 years old and unemployed. (R. 8, 239). Claimant attained an eighth grade education. (R. 10). Claimant was last employed with the Town & Country IGA for approximately 18 months, where her duties included cashiering. (R. 264). Claimant's past work experience includes several other cashiering jobs and work as a cook, deli clerk, housekeeper, stocker, and convenience store manager. (R. 264-67). Claimant asserted numerous medical conditions in support of her disability claim and her inability to work full-time. These medical conditions include diabetic neuropathy, high blood pressure, asthma, bipolar disorder, diverticulitis, ulcers, and irritable bowel syndrome. (R. 11, 18). Claimant

---

job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. SSR 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. § 404, Subpt. P, App. 2, Table 1. *Id.*

5

testified that she is unable to work due to pain associated with her hips, knees, ankles, feet, back, and stomach. (R. 10, 17-18).

## C. Vocational Expert's Testimony at the Administrative Hearing

Robert Lester testified as a VE at the administrative hearing. (R. 21-26). After the VE's testimony regarding Claimant's past work experience (R. 22), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed two hypothetical questions. First, the ALJ asked the following hypothetical question:

> assuming an individual of the same age, education and work experience as [Claimant]. But this individual is limited to sedentary exertion, could lift 10 pounds occasionally, less than 10 pounds frequently. This person could stand and walk . . . up to two hours during an eight hour work day. And standing and walking would be short distances and short increments, under 10 minutes. Anything more than a short[] distance of walking [this individual] would need to have a cane to assist. [This person] could sit for at least six hours. Could not climb ladders, ropes or scaffolds. Could occasionally climb ramps or stairs. Occasionally stoop. And frequent all other postural activities. This person would need to avoid even moderate exposure to pulmonary irritants or work hazards. [This person would need] [r]estroom access in the work area. This person would be limited to simple, repetitive tasks, unskilled work, one and two-step type instructions. This person could tolerate only occasional interpersonal contact with others, general public, peer supervisors. The work would need to be routine in nature, not a lot of change. And not a high-output, high-production assembly-line type work. So less than the full range of sedentary exertion. Could such an individual perform any of the claimant's past relevant work?

(R. 22-23). The VE responded that such an individual could not perform Claimant's past relevant work. (R. 23). Next, the ALJ asked the VE if there were any other sedentary jobs that such an individual could perform. *Id.* The VE answered:

> Sedentary and unskilled work available to such a hypothetical individual would include administrative support activity such as an addresser. The DOT is 209.587-010. There are approximately 70,000 such positions in the national economy, and 1,200 in the regional economy, which is the state of North Carolina. Also a clerking position, such as a document preparer, 249.587-018, approximately 50,000 in the

6

national economy, 750 regionally. And finally work as a call-out operator, 237.367-014, 58,000 in the national economy, 800 regionally. They're representative examples of sedentary, unskilled work that are consistent with the descriptions provided in the dictionary of occupational titles.

*Id.* In the second hypothetical, the ALJ stated:

> [t]his person would be limited to medium exertion. Could lift 50 pounds occasionally, 25 pounds frequently. Could perform occasional climbing with no other postural limits. No concentrated exposure to pulmonary irritants, not even moderate exposure to hazards. Simple repetitive tasks. Occasional interpersonal contact, routine in nature and no high-output assembly-line type work. Could such an individual perform any of the claimant's past relevant work?

(R. 24). The VE responded, that such an individual could perform the stocking work. *Id.* The VE further opined that such an individual could also perform the jobs of hand packager, DOT 920.587-018, 95,000 in the national economy, 2,500 regionally; counter supply worker, DOT 319.687-010, an excess of 200,000 nationally, 5,000 regionally; and sandwich maker, DOT 317.664-010, approximately 100,000 nationally, 2,000 regionally. *Id.*

In response to questioning by Claimant's counsel, the VE testified that the hypothetical individual would not be able to perform any of the identified jobs if the individual had no useful ability to deal with work stress, was not able to maintain attention and concentration for two-hour increments, would be absent from work four times per month, or needed to take breaks in excess of those typically allowed. (R. 25, 26). Claimant's counsel then asked whether the individual would be able to maintain employment in the identified jobs if he or she was unable to bend or stoop. (R. 25). The VE responded that the dictionary of occupational titles lists a number of jobs that require no bending or stooping; however, based on labor market surveys done by the VE, the VE opined that employers are very reluctant to hire anyone who cannot bend or stoop. (R. 25).

7

## V. DISCUSSION

### A. The ALJ's Evaluation of Claimant's Treating Physician's Medical Opinion

Claimant asserts that the ALJ erred by not giving controlling weight to the medical opinion of Claimant's treating physician Karen Skarda, M.D. Pl.'s Mem. at 3-5. In particular, Claimant argues that the ALJ's decision is not supported by substantial evidence and the ALJ did not cite persuasive contradictory evidence to support his assignment of "little weight" to Dr. Skarda's opinion. *Id.* at 5. This court disagrees and finds that the ALJ properly assessed Dr. Skarda's opinion.

The ALJ must generally give more weight to the opinion of a treating physician because that doctor is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 404.1527(d)(2). However, "[c]ircuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig*, 76 F.3d at 590 (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see also Mastro*, 270 F.3d at 178 (citation omitted) (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence"); *Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (stating an ALJ "may under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings"); 20 C.F.R. § 404.1527(d)(3).

When the ALJ does not give the opinion of a treating physician controlling weight, the ALJ must weigh the opinion pursuant to the following factors: (1) the length of the treatment relationship

8

and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. 20 C.F.R. § 404.1527(d)(2)-(6); *see also Johnson v. Barnhart,* 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The medical opinion at issue appeared in a one-page form dated August 17, 2011, entitled "Physical Capacities Evaluation." (R. 408). According to the form, Claimant could lift up to ten pounds occasionally and five pounds frequently; could sit for up to one hour in an eight hour workday; could stand or walk for up to one hour in an eight hour workday; could never push or pull; could rarely balance or climb stairs or ladders; could occasionally perform gross manipulation; could frequently perform fine manipulation; and could never bend or stoop. *Id.* A box is checked on the form indicating it is Dr. Skarda's opinion that Claimant is likely to be absent from work as a result of her impairment or treatment for more than four days per month. *Id.* Where prompted on the form, Dr. Skarda's entire narrative as to the basis for her responses is that Claimant has ongoing medical issues with diabetes, hypertension, obesity, migraine headaches, joint pain (diffuse), low back pain, and chronic stress and anxiety. *Id.* Although the form appears in the record, it is essentially a questionnaire, not appearing to correspond to a contemporaneous examination of Claimant. *Id.*

Form reports such as questionnaires are arguably entitled to little weight due to the lack of explanation. *See Nazelrod v. Astrue,* No. BPG-09-0636, 2010 WL 3038093, at *6 (D. Md. Aug. 2, 2010) (citing *Mason v. Shalala,* 994 F.2d 1058, 1065 (3d Cir. 1993)) ("Form reports in which a

9

physician's obligations [sic] is only to check a box or fill in a blank are weak evidence at best.") (alteration added).

The ALJ acknowledged implicitly the length, frequency, nature, and extent of Claimant's treatment relationship with Dr. Skarda via multiple references to her treatment notes. (R. 38). The record reflects that Claimant was seen by Dr. Skarda on May 13, 2010 (R. 282-83), and on April 13, 2011 (R. 402-03). With respect to Claimant's visit in May 2010, the ALJ noted that "[t]he claimant complained . . . of severe leg pain that she described as aching, stabbing, and burning. Although she had some joint stiffness, there was no tenderness in the legs, and her gait was normal. She was prescribed naproxen and recommended ibuprofen, ice and heat therapy, and exercise." (R. 38). As for Claimant's visit in April 2011, the ALJ explained that a "physical examination in April 2011 showed that the claimant had a slow and wide-based gait, but there was no tenderness in the legs. Pain was managed with Neurontin and Tramadol, and subsequent records showed only medication refills." *Id.* Such consideration of treatment notes shows that the ALJ was aware of the length, frequency, nature, and extent of the treatment relationship Claimant had with Dr. Skarda. *See Paschall v. Astrue*, No. 5:10-CV-161-FL, 2011 WL 1750757, at *4 (E.D.N.C. May 6, 2011) (finding that the ALJ's discussion of treatment notes spanning several years evinced knowledge and consideration of the nature and extent of the treatment relationship). In addition, the ALJ specifically notes in his decision that he considered "all of the evidence," which includes the length of Claimant's treatment relationship with Dr. Skarda, the frequency of examination of Claimant by Dr. Skarda, and Claimant's statements, in response to the ALJ's questioning at the administrative hearing, that Dr. Skarda was her "main physician" and that she had been seeing Dr. Skarda for "about two years." (R. 19, 32).

As for the supportability factor, the ALJ explained in his decision that "[t]he record does not support the claimant's inability to push/pull or bend/stoop. The claimant reported that her activities of daily living included housework and driving, and she testified that she could walk stand/walk for two hours." (R. 40). Further, as observed by the ALJ (R. 38), Dr. Skarda's treatment records did not state any functional limitations and offered insufficient evidence supporting her opinion as provided in her August 2011 Physical Capacities Evaluation. (R. 282-83, 402-03, 408). *See* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Furthermore, treatment records from other sources (R. 66-77, 78-89, 92-103, 104-15) considered by the ALJ in his decision (R. 40) do not support Dr. Skarda's opinion in the Physical Capacities Evaluation. (R. 408).

The ALJ properly concluded that treatment notes and Claimant's reports of activities recorded therein do not support Dr. Skarda's medical opinion. Based on the absence of a sufficient rationale for the opinion and the inconsistency between the opinion and other medical evidence in the record, the ALJ reasonably downgraded the evidentiary value of Dr. Skarda's opinion (R. 408), which appears to have been primarily based upon Claimant's overstated subjective complaints. (R. 66-77, 78-89, 92-103, 104-15). *See Craig*, 76 F.3d at 595 (noting that when evaluating the intensity and persistence of the claimant's pain, and the extent to which it affects ability to work, the evaluation "must take into account not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle

11

spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.") (internal citations omitted). Additionally, the ALJ complied with SSR 96-2p by making his decision sufficiently specific for subsequent viewers to understand the weight accorded Dr. Skarda's opinion and the reasons for said weight. *See Koonce v. Apfel,* No. 98-1144, 166 F.3d 1209, 1999 WL 7864, at *2 (4th Cir. 1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted). The ALJ clearly assigned Dr. Skarda's opinion "little weight," which is evidenced by the ALJ's decision to limit Claimant's RFC to a reduced range of sedentary work and further limit her postural and environmental activities. (R. 40). Therefore, the ALJ applied the correct legal standard in assessing Dr. Skarda's opinion and the ALJ's decision to accord it little weight is supported by substantial evidence. Accordingly, the ALJ did not err in his assessment of Dr. Skarda's opinion.

## B.     The ALJ's RFC Assessment

Claimant contends that the ALJ improperly assessed Claimant's RFC. Pl.'s Mem. at 6-8. The court disagrees and finds that the ALJ's RFC assessment is supported by substantial evidence.

An individual's RFC is defined as the capacity which an individual possesses despite the limitations caused by his physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* SSR 96-8p, 1996 WL 374184,

12

at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). Sufficient consideration of the combined effects of a claimant's impairments is shown when each is separately discussed by the ALJ and the ALJ also discusses Claimant's complaints and activities. *See Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

Claimant's principal argument is that the ALJ erred by not including in the RFC that Claimant's medications pose a significant limitation on her ability to work.[2] Pl.'s Mem. at 7. Claimant argues that she testified at the administrative hearing that her medications made her "very drowsy and very tired." (R. 12). Claimant further asserts that on April 29, 2010, she complained to her physician that Cymbalta was causing lethargy in the afternoon and her dosage was reduced. (R. 294). Claimant also complained of fatigue at a clinic visit on April 13, 2011. (R. 402). In addition,

---

[2] Claimant also argues that the ALJ erred by finding that Claimant can stoop occasionally. Pl.'s Mem. at 7. However, the only portion of the record supporting Claimant's inability to stoop is Dr. Skarda's opinion to which, as discussed *supra*, the ALJ properly decided not to give controlling weight. The ALJ explained in his decision that "[t]he record does not support the claimant's inability to push/pull or bend/stoop. The claimant reported that her activities of daily living included housework and driving, and she testified that she could walk stand/walk for two hours." (R. 40). Thus, the court finds that the ALJ's determination that the Claimant can stoop occasionally is supported by substantial evidence.

13

Claimant contends that she was also taking Neurontin and Lamictal, both of which "can produce" drowsiness. Pl.'s Mem. at 8. Claimant, therefore, concludes that the medical record supports her testimony concerning the limiting side effects of her medication and the ALJ's RFC determination is not supported by substantial evidence. Pl.'s Mem. at 7.

In his decision, the ALJ noted that the Claimant "alleged that her medications made her drowsy and tired, requiring her to lie down several times per day. She testified that she reported these complaints and side effects to her medical providers, but the medical record does not reflect *such reports.*" (R. 41) (emphasis added). While Claimant reported to her physician that the dosage of Cymbalta she was taking was causing lethargy in the afternoon, her dosage was reduced and she did not complain further of lethargy associated with Cymbalta. (R. 294). Though Claimant complained of fatigue at her clinic visit on April 13, 2011, she never reported having to lie down several times per day as a result. (R. 402). Thus, the ALJ was correct in saying that the medical record does not reflect "such reports." (R. 41). In other words, the ALJ was observing that Claimant was overstating the nature and severity of her complaints to her physicians regarding the alleged side effects of her medications. Furthermore, Claimant cites no objective medical evidence or physician's opinion that she needs to lie down several times per day as a result of her current medications. Pl's Mem. at 1-14. Thus, Claimant's argument that the Neurontin and Lamictal she was taking "can produce" drowsiness is conjecture and unsupported as to Claimant.[3]

---

[3] Even if the ALJ erred by stating that the medical record does not reflect Claimant's subjective reports of medication side effects (R. 41), it was harmless error, since, as discussed *infra*, the ALJ properly found Claimant's subjective allegations were not fully credible. *See infra* § V.D. "The ALJ's Assessment of Claimant's Credibility"; *see also Lee v. Sullivan*, 945 F.2d 687, 692-693 (4th Cir. 1991); *Morgan v. Barnhart*, 142 F. App'x 716, 726 (4th Cir. 2005) (recognizing the harmless error doctrine within the social security context).

14

Based on the forgoing, the ALJ's RFC finding is supported by substantial evidence. The ALJ analyzed the relevant evidence, sufficiently explained his findings and applied the correct legal standards in evaluating Claimant's RFC. Moreover, the ALJ assigned the Claimant to a reduced range of sedentary work and further limited her postural and environmental activities. (R. 40). Accordingly, Claimant's arguments on this issue are without merit.

## C. The ALJ's Hypothetical to the VE

Claimant asserts that the hypothetical questions posed by the ALJ to the VE failed to include sufficient limitations in that they were based on an erroneous RFC assessment. In particular, Claimant contends that the ALJ erred by posing a hypothetical that Claimant could occasionally stoop and by failing to include in the hypothetical that the side effects of Claimant's medications limit her ability to work. Pl's Mem. at 7-9. The court disagrees.

"Questions posed to a VE should be based upon a consideration of all relevant record evidence, and fairly set out all of a claimant's impairments." *Mascio v. Colvin*, No. 2:11-CV-65-FL, 2013 WL 3321577, at *4 (E.D.N.C. July 1, 2013) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). "However, an ALJ 'has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question.'" *Id.* (citing *Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999)); *see also Ehrhart v. Sec'y, HHS*, 969 F.2d 534, 540 (7th Cir. 1992) (noting "the hypothetical question posed by the ALJ was proper because it reflected [claimant's] impairments to the extent that the ALJ found them supported by evidence in the record."); *Mixon v. Astrue*, No. 4:06-CV-249-FL, 2008 WL 111157, at *9 (E.D.N.C. Jan 8, 2008); *Bryant v. Astrue*, No. 7:06-CV-00151-FL, 2008 WL 2037421, at *11 (E.D.N.C. May 12, 2008).

15

Because the court has determined that the ALJ's RFC finding is supported by substantial evidence (including that Claimant has the ability to stoop occasionally and the ALJ's decision not to include the allegedly limiting side effects of Claimant's medications), and Claimant's arguments rely on the ALJ's RFC finding being erroneous, the court rejects this portion of Claimant's challenge. *See supra* § V.B. "The ALJ's RFC Assessment."

**D.     The ALJ's Assessment of Claimant's Credibility**

Claimant contends that the ALJ's credibility finding is not supported by substantial evidence and that the ALJ should have assigned great weight to Claimant's testimony. Pl.'s Mem. at 9. The court disagrees.

At step four of the sequential evaluation process, an ALJ must undertake a two-step credibility analysis to determine whether a claimant's subjective complaints of pain are in accord with objective medical evidence. *Craig*, 76 F.3d at 593-96; 20 C.F.R. § 404.1529(a)-(c); SSR 96-7p, 1996 WL 374186 at *1 n.1, 2 (July 2, 1996). First, the ALJ must find that the claimant has medically documented impairments that could cause his or her alleged symptoms. SSR 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564. If the ALJ makes the step one finding, he must then evaluate the extent to which the claimant's statements concerning the intensity and persistence of his symptoms are supported by the objective medical record. SSR 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564-65. If the ALJ does not find a claimant's statements to be credible, the ALJ must give specific reasons for so finding and those reasons must be supported by the evidence. SSR 96-7p, 1996 WL 374186, at *2; 20 C.F.R. § 404.1529(c)(4); *see also Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (stating that credibility determinations should refer to the evidence forming

16

the basis for the conclusion). Because objective medical evidence may not capture the full extent of a claimant's symptoms, where the objective medical evidence and subjective complaints are at odds, the ALJ should consider any and all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." SSR 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors).

In the present case, the ALJ's determination that Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms are not credible is supported by substantial evidence. (R. 37). The ALJ gave specific reasons which are supported by the evidence for declining to credit Claimant's statements. (R. 37-41). At the hearing, Claimant stated that she requires the use of a cane to walk more than short distances. (R. 13). Additionally, as observed by the ALJ, Claimant presented as needing assistance from counsel to ambulate and get in and out of her chair due to neuropathy. (R. 40). The ALJ noted that the medical records do not corroborate this level of limitation. (R. 40). First, Claimant was not prescribed a cane by any of her physicians, thus Claimant has not established that it is medically required.[4] Second, the ALJ observed, Claimant's activities of daily living, including her ability to drive, clean, and do housework, are compelling evidence that her pain and inability to ambulate are not as severe as Claimant claims. (R. 13, 40-41). Furthermore, the ALJ explained that "[b]esides some minimally reduced range of motion in her

---

[4] An ALJ is required to consider the impact of "medically required" hand-held assistive devices. *Eason v. Astrue*, No. 2:07-CV-30-FL, 2008 WL 4108084, at *16 (E.D.N.C. Aug. 29, 2008); SSR 96-9, 1996 WL 374185, at *7 (July 2, 1996). A hand-held assistive device is "medically required" if "medical documentation establish[es] the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p, 1996 WL 374185, at *7.

knees, examinations revealed full range of motion and strength through the remainder of the claimant's body." (R. 40). The ALJ additionally supports further discounting Claimant's credibility by pointing to Claimant's statement that the side effects of her medications required her to lie down several times per day due to fatigue and that she reported this to her doctors. (R. 41). As discussed *supra* in section V.B. "The ALJ's RFC Assessment," the medical evidence does not support that Claimant made such a report to her doctors, which further evidences Claimant's tendency to overstate her limitations. In fact, the record reflects that Claimant denied being fatigued on at least two clinic visits. (R. 282, 402). Therefore, the ALJ concluded that Claimant's allegations were not fully credible, and the evidence supported the reduced sedentary RFC finding.

The ALJ's reasons for finding Claimant's testimony not credible and his analysis of factors where the medical evidence and Claimant's subjective complaints are not in accord constitute an appropriate and complete consideration of Claimant's credibility, and demonstrates substantial evidence supporting the ALJ's determination that Claimant is not as functionally limited as she claims. Accordingly, the ALJ did not err in his credibility determination.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-24] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-26] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District

Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, the 22nd day of July 2014.

Robert B. Jones, Jr.
United States Magistrate Judge